### HURST v. LEDERER, Internal Revenue Collector.

(Circuit Court of Appeals, Third Circuit. June 3, 1921.)

#### No. 2634.

1. **Internal revenue ⊗⇒38—In suit to recover back payment, plaintiff has burden to show previous payment.**

   In a suit to recover back taxes claimed to have been illegally collected, in that they had been previously paid, the burden of showing such previous payment rested on plaintiff.

2. **Internal revenue ⊗⇒22—Collector not responsible for taxes paid deputy not assigned to particular portion of district.**

   Under Act March 1, 1879, c. 125, § 2 (Comp. St. § 5849), providing that every deputy collector of internal revenue shall have the same authority as the collector to collect taxes levied or assessed within the portion of the district assigned to him, etc., the collector was not responsible for taxes, even if paid to a deputy, where he was not the deputy assigned to the portion of the district in which the taxes were levied or assessed.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Marriott Hurst against Ephraim Lederer, Collector of Internal Revenue for the First District of Pennsylvania. Judgment for defendant, and plaintiff brings error. Affirmed.

James J. Breen, Louis L. Tafel, and James B. McGrane, all of Philadelphia, Pa., for plaintiff in error.

Edward S. Kremp, Sp. Asst. U. S. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa. (Carl A. Mapes, Solicitor of Internal Revenue, and Walter G. Moyle, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case, Marriott Hurst, a taxpayer, sued Ephraim Lederer, collector of internal revenue, to recover back some $2,000 of taxes, alleged to have been illegally collected from him under protest and by duress of a warrant, distraint, and threat of sale. The alleged illegality consisted in the fact, asserted by Hurst, that he had already paid the tax to the collector by a payment thereof made to one Wright, a deputy collector of Lederer, the collector.

On the trial, the court directed a verdict and judgment in favor of Lederer, and thereupon Hurst sued out this writ and assigned as error the direction of a peremptory verdict. Accordingly the questions

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

involved are, first, whether there was proof to go to the jury on the issue of whether Hurst did actually pay the money to Wright, the deputy collector; and, second, whether the latter had authority to collect the money.

Assuming, for present purposes, that there was evidence of actual payment to the deputy collector, and that that question should have been submitted to the jury, there yet remains the underlying and decisive question of the authority of the deputy collector to receive it, and thereby bind Lederer, who, in point of fact, never did receive it. The proofs in the case show that, on the last day the taxes were payable, Hurst telephoned to Lynch, a friend of his in the Post Office Department, which was in the same building with the collector's office, and inquired about the number of people who were then crowding that office to pay their delayed taxes. Lynch told him it was large, but that, if he would come down, he (Lynch) would get him inside the railings. Hurst came down, and, instead of taking a place with the people going up to the cashier's window and paying the cashier, Lynch and Hurst went inside, where the public was not admitted, and went to the desk of Wright, a deputy collector.

There was a conflict in the testimony at this point as to whether Hurst counted out his money to Wright, and the latter took it and carried it away, or whether Hurst counted it out to Lynch, the post office messenger, who carried it over and put it in the desk drawer of Betts, another deputy, who was a field deputy in the district where Hurst lived. Hurst testified he had not known and never saw Wright before that day. Wright, who was called by Hurst as a witness, testified he was a deputy collector; that he did not take Hurst's money, and had no authority to take it. He said he was taking affidavits, and took Hurst's; that he saw some money; that Lynch took it, and put it in an envelope; that Lynch asked for Betts, who was the deputy "in charge of the district where Hurst's place was"; that he walked toward Betts' desk, when told where it was; and that he started toward it with the envelope in his hand. Lynch's testimony was substantially to the same effect. He said he himself took the money and left it in Betts' desk drawer. No receipt was given by any one to Hurst for the money. No testimony was adduced by Hurst as to the authority of Wright to receive the money, and the only statutory authority cited to the court was the Act of March 1, 1879, chapter 125, section 2 (Comp. St. § 5849), printed in the margin.[1]

On the part of the defendant, the collector, Lederer, testified that Betts, the district deputy, "had the northeast section of the city, in which Mr. Hurst's saloon was located." He testified the general rule

---

[1] "That each collector of internal revenue shall be authorized to appoint, by an instrument in writing under his hand, as many deputies as he may think proper: * * * Provided, however, * * * each such deputy shall have the like authority in every respect to collect the taxes levied or assessed *within the portion* of the district assigned to him which is by law vested in the collector himself; but each collector shall, in every respect, be responsible, both to the United States and to individuals, as the case may be, for all moneys collected, and for every act done or neglected to be done, by any of his deputies while acting as such."

of the office was that "money paid in must be paid to the cashier"; that on the previous week the cashier had called his attention to the fact that parties were coming to the office and trying to have the deputies deviate from the order, and he had made a positive order reaffirming the rule.

[1, 2] This suit being to recover taxes illegally collected, the burden of showing a previous payment rested on the plaintiff, and inasmuch as the proof was that Lederer had never received the money, and had never authorized Wright to receive it for him, it is apparent Hurst has not made out a case against Lederer, unless the law itself makes Lederer's appointment of Wright deputy collector carry with it the right and authority to collect money. And it is here that, in light of the proofs, the plaintiff's case fails, for he cannot justify his alleged payment to Wright by the terms of the statute. That statute provides:

"Each such deputy shall have the like authority in every respect to collect taxes levied or assessed within the portion of the district assigned to him which is by law vested in the collector himself."

But the proofs show that Betts was the deputy to whom alone it could be contended this language applied, and that Betts was the man Lynch and Hurst meant to reach. Unfortunately, they did not find Betts, and in his absence the cashier was the only person to whom Hurst could pay his money, so as to bind Lederer.

Taking the most favorable view of the plaintiff's proofs as to what followed, it is apparent that Lederer was not in fault in any way, and that the loss that resulted to Hurst arose, not from anything Lederer did, or failed to do, but wholly from what Hurst did, or failed to do, and, where one or two innocent men suffer wrong, he must suffer whose acts or omissions caused the injury.

We are of opinion the record shows no error in giving binding instructions for the defendant.

